1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   MARK A. WILLIAMS (Cal. Bar No. 239351)
4  Assistant United States Attorney
   Chief, Environmental and Community Safety Crimes Section
5  MATTHEW W. O'BRIEN (Cal. Bar No. 261568)
   Assistant United States Attorney
6  Environmental and Community Safety Crimes Section
   MAXWELL COLL (Cal. Bar No. 312651)
7  Assistant United States Attorney
   Asset Forfeiture and Recovery Section
8       1300 United States Courthouse
        312 North Spring Street
9       Los Angeles, California 90012
        Telephone:  (213) 894-3359/8644/1785
10      E-mail:    Mark.A.Williams@usdoj.gov
                   Matthew.O'Brien@usdoj.gov
11                 Maxwell.Coll@usdoj.gov

12 KENNTEH A. POLITE, JR.
   Assistant Attorney General
13 Criminal Division
   CHRISTIAN A. LEVESQUE (D.C. Bar No. 501778)
14 Trial Attorney
   Human Rights and Special Prosecutions Section
15 United States Department of Justice
        1301 New York Ave
16      Washington, DC 20530
        Telephone: (202) 538-2373
17      E-mail:  Christian.Levesque@usdoj.gov

18 Attorneys for Plaintiff
   UNITED STATES OF AMERICA
19

20                  UNITED STATES DISTRICT COURT

21             FOR THE CENTRAL DISTRICT OF CALIFORNIA

22 UNITED STATES OF AMERICA,          No. CR 20-307-GW

23         Plaintiff,                 GOVERNMENT'S MOTION IN LIMINE TO
                                      ADMIT CO-CONSPIRATOR STATEMENTS
24         v.                         AND OTHER ACTS

25 MOHAMAD YASSIN ALCHARIHI,          Hearing Date: June 5, 2023
     aka "Mohamad al-Sharihi" and     Hearing Time: 8:00 a.m.
26   "Mohamad AlCharihi,              Location:     Courtroom of the
                                                    Hon. George H. Wu
27         Defendant.

28

The United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Mark Williams, Matthew O'Brien, and Maxwell Coll, and Trial Attorney Christian Levesque, hereby files this Motion in Limine to Admit Co-Conspirator Statements and Other Acts.

This Motion is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 24, 2023                    Respectfully submitted,

                                       E. MARTIN ESTRADA
                                       United States Attorney

                                       MACK E. JENKINS
                                       Assistant United States Attorney
                                       Chief, Criminal Division

                                            /s/
                                       _____
                                       MARK A. WILLIAMS
                                       MATTHEW W. O'BRIEN
                                       MAXWELL COLL
                                       Assistant United States Attorneys

                                       KENNETH A. POLITE
                                       Assistant Attorney General
                                       Criminal Division


                                            /s/
                                       _____
                                       CHRISTIAN A. LEVESQUE
                                       Trial Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3       Defendant and Belal AlJrad ("AlJrad") conspired to import a
4   valuable Roman mosaic (the "Mosaic") through Turkey and into the
5   United States in order to sell it for a massive profit.  Defendant
6   and AlJrad communicated regularly - often on a daily basis - about
7   their scheme to conceal the Mosaic and traffic in other cultural
8   artifacts, and to create fake documents to effectuate the importation
9   and eventual sale of the ancient artifact.

10      Following a meet and confer with defense counsel, the government
11  understands that defendant does not object to the introduction of
12  AlJrad's co-conspirator statements regarding what is clearly the
13  Mosaic at issue, so long as the statements were made before the
14  importation from Turkey into Los Angeles in August 2015.  But the
15  messages between defendant and AlJrad extend beyond the importation
16  of the Mosaic and involve discussions about restoring and selling the
17  Mosaic, and importing other smuggled mosaics.  At trial, the
18  government intends to introduce text messages and emails between
19  defendant and AlJrad.  The communications are admissible for several
20  independent reasons:

21  - First, the communications are admissible pursuant to Federal
22    Rule of Evidence 801(d)(2)(E) because AlJrad was defendant's
23    co-conspirator, and the statements were made in furtherance of
24    the scheme.

25  - Second, and independently, AlJrad's statements to defendant are
26    admissible under the hearsay exception for the purpose of
27    showing the statements' effect on the listener (the defendant).

28

- Third, the **defendant's** communications to AlJrad and other co-conspirators are admissible as statements of a party opponent pursuant to Rule 801(d)(2)(A), and AlJrad's statements are necessary to provide context to the defendant's admissions.

- Fourth, some of the communications between defendant and AlJrad are admissible because they evidence defendant's conduct regarding attempting to smuggle other mosaics, and hence are inextricably intertwined with the charged offense.

- Fifth, and in the alternative, even if some of the communications are not inextricably intertwined with the charged offense, they are admissible pursuant to Rule 404(b) because they show defendant's intent, absence of mistake, knowledge, motive, and plan in effecting the import of the Mosaic into the United States upon a false classification.

The government files this motion in limine seeking a Court order confirming the admissibility of the communications between defendant and AlJrad, and communications about additional mosaics and panels.

## II.  RELEVANT LEGAL STANDARDS

### A.  Co-Conspirator Statements

A statement made by one co-conspirator or co-schemer during the course and in furtherance of the conspiracy or scheme may be used against another conspirator or co-schemer because such statements are not hearsay.  Fed. R. Evid. 801(d)(2)(E); Bourjaily v. United States, 483 U.S. 171, 183 (1987).  A statement admitted pursuant to Rule 801(d)(2)(E) does not violate the Confrontation Clause, and no independent inquiry into reliability is needed.  Bourjaily, 483 U.S. at 183-84; United States v. Knigge, 832 F.2d 1100, 1107 (9th Cir. 1987), amended, 846 F.2d 591 (9th Cir. 1988).  Rule 801(d)(2)(E)

2

requires a foundation that: (1) the declaration was made during the life of the conspiracy; (2) the declaration was made in furtherance of the conspiracy; and (3) there is, including the co-conspirator's declaration itself, sufficient proof of the existence of the conspiracy and defendant's connection to it.  *Bourjaily*, 483 U.S. at 173, 181; *United States v. Smith*, 893 F.2d 1573, 1578 (9th Cir. 1990).  These foundational requirements must be established by a preponderance of the evidence.  *Bourjaily*, 483 U.S. at 175; *United States v. Schmit*, 881 F.2d 608, 610 (9th Cir. 1989).  To be admissible under Rule 801(d)(2)(E), the statement must "further the common objectives of the conspiracy," or "set in motion transactions that [are] an integral part of the [conspiracy]."  *United States v. Aramula-Ruiz*, 987 F.2d 599, 607-08 (9th Cir. 1993).

To be "in furtherance" of the conspiracy or scheme, the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy.  *United States v. Yarbrough*, 852 F.2d 1522, 1535 (9th Cir. 1988).  Examples of admissible co-conspirator statements include, among other things: "statements made to induce enlistment or further participation in the group's activities; statements made to prompt further action on the part of conspirators; statements made to reassure members of a conspiracy's continued existence; statements made to allay a co-conspirator's fears; and statements made to keep co-conspirators abreast of an ongoing conspiracy's activities."  *United States v. Nazemian*, 948 F.2d 522, 529 (9th Cir. 1991) (citations omitted).  Likewise, "[s]tatements designed to conceal an ongoing conspiracy are made in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)."  See *United States v. Payne*, 437 F.3d

540, 546 (6th Cir. 2006).  And though the statement must be in furtherance of a conspiracy, it need not be the exclusive, or even primary, purpose of the declaration.  See United States v. Guyton, 36 F.3d 655, 659 (7th Cir. 1994).

Additionally, a co-conspirator statement need not be made in the presence of the defendant, or even made to another conspirator, to be admissible.  See Sendejas v. United States, 428 F.2d 1040, 1045 (9th Cir. 1970) ("It is well settled that a conversation between two co-conspirators which takes place out of the presence of a third co-conspirator is admissible into evidence against the third co-conspirator."); United States v. Lloyd, 807 F.3d 1128, 1160-61 (9th Cir. 2015) ("It is not necessary that the statement be made to another member of the conspiracy for it to come under [R]ule 801(d)(2)(E).").

Nor, for that matter, must the statement be communicated to another person at all to qualify as a co-conspirator statement.  See, e.g., United States v. Schmit, 881 F.2d at 613 ("Ledgers, books of record, and notes containing information relevant to the conspiracy may be admissible against co-conspirators as statements in furtherance of the conspiracy without evidence they were in fact consulted or otherwise communicated."); United States v. Smith, 893 F.2d 1573 (9th Cir. 1990) (calendar/drug ledger was admissible as co-conspirator statement where government established that ledger was made during course and in furtherance of conspiracy, and identity of author of ledger was reasonably certain); United States v. Valles-Valencia, 811 F.2d 1232, 1237 (9th Cir. 1987) (same); United States v. Graciano-Cabanilla, 113 Fed. App'x 761, 762 (9th Cir. 2004) (pay-

4

owe ledger seized from alleged co-conspirator was admissible as non-hearsay co-conspirator's statement).

Finally, a conspiracy does not need to be charged for co-conspirator statements to be admissible under Rule 801(d)(2)(E).  See United States v. Rapi, 175 F.3d 742, 750 (9th Cir. 1999); United States v. Portac, Inc., 869 F.2d 1288, 1294 (9th Cir. 1989) (a conspiracy need not be charged; "[a] concert of action creates a conspiracy for purposes of the evidence rule.")  "A coconspirator's statement is admissible upon proof that it was made in furtherance of a conspiracy, notwithstanding the fact that the indictment does not contain a conspiracy count.  The question is merely whether there was proof of a sufficient concert of action to show the individuals to have been engaged in a joint venture."  United States v. Layton, 855 F.2d 1388, 1398 (9th Cir. 1988) (internal quotations and citations omitted), cert. denied, 489 U.S. 1046 (1989).

**B.   Inextricably Intertwined Evidence and Rule 404(b) Evidence**

If evidence of prior conduct is inextricably intertwined with the charged offense, then such evidence "is not subject to exclusion under Rule 404(b)."  United States v. Sayakhom, 186 F.3d 928, 937-38 (9th Cir. 1999).  Evidence of a defendant's other acts is admissible "when it [is] necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime."  United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995).  A jury cannot be "expected to make its decision in a void" and remain unaware of the "time, place, and circumstances of the acts which form the basis of the charge."  United States v. Daly, 974 F.2d 1215, 1216 (9th Cir. 1992) (internal quotations omitted).

"Rule 404(b) permits evidence of prior wrongs or acts to show proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Bailey, 696 F.3d 794, 799 (9th Cir. 2012) (quotation omitted). The Ninth Circuit has repeatedly held that the Rule is one of "inclusion," permitting evidence of other relevant crimes or acts "except where it tends to prove only criminal disposition." United States v. Ayers, 924 F.2d 1468, 1472-73 (9th Cir. 1991). Evidence of other acts may be admitted under Rule 404(b) if: "(1) the evidence tends to prove a material point; (2) the prior act is not too remote in time; (3) the evidence is sufficient to support a finding that the defendant committed the other act; and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." United States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005).

## III. ARGUMENT

### A. Belal AlJrad's Statements in Messages and Emails to Defendant Are Admissible

#### 1. AlJrad's Co-Conspirator Statements Are Admissible Under Rule 801(d)(2)(E).

Defendant and AlJrad conspired to falsely effect entry of the Mosaic (and other mosaics) into the United States to sell them for a massive profit. The government will present ample evidence to establish this conspiracy. As detailed below, defendant and AlJrad communicated at every stage of the conspiracy to import the Mosaic and other artifacts into the United States: In January 2015, before they imported the Mosaic to Los Angeles, they messaged about the discovery of the Mosaic and its value and origin. Then, they communicated about their scheme to conceal the Mosaic in a shipment by hiding it with a modern mosaic and vases. After the Mosaic

arrived in Palmdale, they discussed how to restore and repair the Mosaic.  Throughout the scheme, they communicated and planned how to sell the Mosaic and reap the profits.

Indeed, from January 2015 through March 2016 (when the FBI seized the Mosaic from defendant's garage in Palmdale), defendant and AlJrad communicated with each other almost every day about the Mosaic and other valuable artifacts.

As an initial matter, there is no doubt that **defendant's text messages** and emails to AlJrad are admissible against defendant as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(A).  These statements "therefore count as 'independent evidence' that, considered with [the co-conspirator's] statements, can provide the requisite connection [to the conspiracy]." United States v. Saelee, 51 F.4th 327, 342 (9th Cir. 2022).  Unlike cases where the co-conspirator statements are made separate and apart from the defendant, the vast majority of the statements at issue here were made directly between defendant and AlJrad.

At trial the government will show that defendant and AlJrad communicated regularly about their conspiracy to falsely effect entry of the Mosaic (and other mosaics) into the United States to sell them for a massive profit.  For example, on January 1, 2015, when defendant and AlJrad first communicated about this specific Mosaic, the two exchanged the following messages about the discovery of the Mosaic and its origin and value:

| AlJrad | Time (1/1/2015) | Defendant |
|---|---|---|
| **[Sends Message With Seven Photos of the Mosaic to Defendant]** | 10:31pm UTC | |
| Peace be upon you! This is a mosaic piece, 4 meters high and 2 meters wide | 10:39pm UTC | |
| Currently located in Turkey<br><br>It needs to be marketed through your auctions, evaluated, and then we can think about how we want to get it to you | 10:40pm UTC | |
| if we get a good price | 10:41pm UTC | |
| | 10:53pm UTC | As for the paintings, today I will ask a person who specializes in these matters. |
| Your price is out of reach. | 10:53pm UTC | |
| | 10:53pm UTC | God's willing |
| It could reach a million dollars.<br><br>A rare work. | 10:53pm UTC | |
| | 10:53pm UTC | Oh my God! |
| If not more | 10:54pm UTC | |
| | 10:54pm UTC | [Roman]? |
| People in it [the painting] are [emperors]<br><br>Zeus and Hercules | 10:54pm UTC | |

| | | |
|---|---|---|
| between Roman and Greek<br><br>Was it in a palace<br><br>The guys delivered it to Turkey. | | |
| | 10:55pm UTC | hahahaha, emperors? I did not see your picture, nor the picture of Abu Mahmoud |
| **[Sends Message With Photo of a rolled-up mosaic]**<br><br>Hahaha [. . .] Alright it is ready to be shipped. | 10:55pm UTC | |
| | 10:55pm UTC | OK, God willing, I will check on it. |
| Work on it, it has a good profit.<br><br>May God make your ways easy | 10:56pm UTC | |
| **AlJrad** | **Time (1/7/2015)** | **Defendant** |
| **[Sends photo of the Mosaic]** | 11:09pm UTC | |
| It was removed from the floor of a room that I told you about, it is another panel mural.  Enlarge the picture to show the wall of the room before dismantling.<br><br>It is not registered or wanted by any party in the world | 11:09pm UTC | |

| | | |
|---|---|---|
| and has not been announced before. | | |
| | 11:11pm UTC | Was it in the wall or in the floor? |
| This was in the floor.<br><br>Look, the painting edge is showing a wall.<br><br>The other mural is different. | 11:11pm UTC | |
| | 11:12pm UTC | Let's take care of the first one. |

The two communicated over the coming days about the potential value of the Mosaic, with defendant stating that he heard the price is "no less than one million dollars."  The two discussed creating an invoice to "prove [defendant's] ownership" of the piece.

As defendant and AlJrad furthered the conspiracy by making plans to ship the Mosaic to the United States, on January 30, 2015, and on February 9, 2015, they exchanged the following text messages about using a modern mosaic to conceal the ancient Mosaic in the shipment:[1]

---

[1] Defendant shipped the authentic Mosaic with a modern mosaic depicting fish, and defendant sent a photograph of the fish mosaic to his U.S. customs broker in response to an inquiry for more information about what exactly was in the container.

10

| AlJrad | Time (1/30/2015) | Defendant |
|---|---|---|
| **[Sends Message With Photo of the Fish Mosaic]**<br> | 5:37pm UTC | |
| Swimming pools' floors<br>We can make it for you as you like.<br>. . .<br>It is a disguise | 10:09pm UTC | |
| | 10:11pm UTC | Hahaha |
| **AlJrad** | **Time (2/9/2015)** | **Defendant** |
| **[Sends Message With Photos of the Modern Mosaic Depicting Fish]**<br> | 8:24pm UTC | |
| | 8:25pm UTC | How beautiful |
| This is under construction . . .<br><br>Those are for the disguise | 8:26pm UTC | |
| | 8:26pm UTC | But I would prefer the color (to be) blue and its grades |

On March 8, 2015, as the modern mosaics were almost finished and ready for shipment with the ancient Mosaic, defendant and AlJrad exchanged the following messages about procuring fake paperwork for the importation and classification of the Mosaic:

| AlJrad | Time (3/8/2015) | Defendant |
|---|---|---|
| | 10:40pm UTC | Mister, these things are priceless. And all that is needed is to know how to make items enter legitimately...the seals, witnesses, sealed and translated ownership documents and sales contracts, the purchase value, the paid amount, and the paid customs. For example, I would buy this panel from you for 1000 dollars with a contract, a seal and witnesses, but (once) it arrives, I would pay 100 dollars in customs for it, it became legitimate. |
| | 10:41pm UTC | We only need it to arrive and pay its customs as a mosaic mural, and there is a documented and translated sales contract. |
| I understood you

Good | 10:41pm UTC | |

| | | |
|---|---|---|
| | 10:42pm UTC | Just prepare the contract, seals, and witnesses and I will prepare a paid customs invoice. |
| | 10:43pm UTC | Once it arrives safely, my work will begin between museums and brokers. |
| God willing | 10:43pm UTC | |
| It needs people who are free and can take the risk<br><br>of the adventure | 10:45pm UTC | |
| | 10:46pm UTC | Its size, weight, and transfer it abroad, all is a dangerous risk. |
| of course it is<br><br>It has been two months<br><br>That we were preparing<br>Our work<br><br>And we haven't finished yet<br><br>The matter is not easy | 10:46pm UTC | |

On August 20, 2015, when the Mosaic arrived in Los Angeles from Turkey, the two messaged about the shipping container and damage to the vases they had used to conceal the Mosaic. After noting the vases were broken, defendant told AlJrad, "No problem, everything is

13

going fine."  AlJrad responded to defendant, "**_Take care of it, hide it!_**"

In October 2015, as the two exchanged fake Syrian documents that they created in order to sell the Mosaic, defendant told AlJrad that there were "too many unnecessary stamps" and that this was "very suspicious."  AlJrad responded that "no, that's very normal" and was a "replica of the original copy" they were working from.  The two discussed altering dates on the documents to make them seem legitimate.  Defendant and AlJrad exchanged messages about selling the Mosaic to the Getty Museum because such a path would be "safer" than auctions, which would "expose the panels."  AlJrad told the defendant, "God willing, we will fill the [Getty] with mosaic[s] from us."

In December 2015, after defendant hired a third party to restore the Mosaic, defendant discussed the potential profits with AlJrad and another co-conspirator.  Defendant stated, "Casting will cost 45 thousand, and the **panel's price will reach about 3 to 4 million.**" Defendant expressed frustration with the split of money after the sale among the co-conspirators, including AlJrad.  Defendant's communications with AlJrad confirm that they conspired to ship the Mosaic concealed among other fake mosaics and vases, and to restore and sell it for a massive profit.

Even if defendant's own statements were not sufficient to establish the threshold conspiracy (they are), AlJrad's Facebook accounts corroborate and furthered the conspiracy.  AlJrad maintained a Facebook account (Aseal Aljraadat) and managed a second Facebook account used as a marketplace for looted goods from Syria, dubbed "Fragrant Ancient History."  Through these accounts, AlJrad and other

14

1   third parties advertised mosaics and additional artifacts from war-
2   torn Syria.  AlJrad posted several pictures on these public Facebook
3   pages that are identical to photographs AlJrad messaged directly to
4   defendant.  AlJrad also used the Facebook accounts to seek help
5   restoring and selling the Mosaic.
6       For example, on November 18, 2015, while defendant and AlJrad
7   communicated about the restoration of the Mosaic, AlJrad made a
8   public Facebook post with a picture of individuals excavating a
9   mosaic and asking for help finding someone in the United States who
10  could help restore a "mosaic panel":



27  Soon after AlJrad's Facebook post, defendant hired Stephen Miotto to
28  restore the Mosaic in his garage in Palmdale.

1    "Only 'slight evidence' is necessary to connect a coconspirator

2 to the conspiracy." <u>United States v. Perez</u>, 658 F.2d 654, 658 (9th

3 Cir. 1981).  The evidence summarized above is far greater than what

4 is necessary to establish the conspiracy.  AlJrad's statements are

5 admissible under Federal Rule of Evidence 801(d)(2)(E) because they

6 were made during and in furtherance of the conspiracy.  From January

7 2015 through March 2016, AlJrad kept defendant abreast of ongoing

8 activities within the conspiracy and furthered the conspiracy.  As

9 discussed <u>supra</u>, the co-conspirators communicated about how they

10 would ship the Mosaic into the United States, conceal it, restore it,

11 and sell it for a profit.  The Court should allow the government to

12 introduce AlJrad's statements as co-conspirator statements made in

13 furtherance of the conspiracy.

14           2.   <u>AlJrad's Messages and Emails Are Also Admissible To</u>
                  <u>Show the Effect on the Listener and the Context for</u>
15                <u>Defendant's Own Statements.</u>

16    In addition to being co-conspirator statements and thus

17 admissible under the exception to the rule against hearsay, AlJrad's

18 messages and emails to defendant are admissible for the separate

19 purpose of showing the effect on the listener (defendant) and the

20 context surrounding defendant's own statements about the Mosaic.

21    Defendant is charged with causing the misclassification of the

22 Mosaic with respect to its value and its quality.  AlJrad's

23 statements about the discovery of the Mosaic, the creation of fake

24 documents, the shipment of the Mosaic to the United States, the

25 restoration of the Mosaic, and the attempts to sell the Mosaic for a

26 profit are all admissible to show the effect on defendant and provide

27 context for defendant's responses.

28

**B.  Defendant's Conduct With Respect to Uncharged Mosaics and Artifacts Is Admissible**

    1.  <u>Evidence About Uncharged Mosaics Is Inextricably Intertwined with the Charged Offense</u>

A separate, independent basis for the Court to allow the government to introduce evidence that defendant was communicating with AlJrad about the smuggling of additional mosaics and panels is that this evidence is inextricably intertwined with the charged offense.  The text messages show that defendant and AlJrad were using the Mosaic as a test run for the importation and sale of additional smuggled panels from Syria.  As AlJrad told the defendant, he wanted defendant to "[m]ake me the king of the Middle East antiques." Together, they "will fill the [Getty] museum with mosaics," as the "panels that we are bringing in [a]re unbelievable."

Under the inextricably intertwined doctrine, "evidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if 'the evidence concerning the "other" act and the evidence concerning the crime charged are inextricably intertwined.'"  <u>United States v. Loftis</u>, 843 F.3d 1173, 1177 (9th Cir. 2016) (quoting <u>United States v. Dorsey</u>, 677 F.3d 944, 951 (9th Cir. 2012)).  Here, the evidence is necessary "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime," such as to "explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime."  <u>Loftis</u>, 843 F.3d at 1178 (citing <u>Vizcarra-Martinez</u>, 66 F.3d at 1012-13)).

Defendant and AlJrad communicated regularly about the Mosaic as well as other panels and artifacts smuggled from Syria.  This evidence is inextricably intertwined with the defendant's conspiracy

to falsely import and conceal the Mosaic, and evade government scrutiny of the shipment.  For example:

- On June 13, 2015, defendant and AlJrad communicated about a separate mosaic AlJrad obtained and was attempting to ship to defendant.  Defendant stated that he found that mosaic on an Interpol watchlist and expressed concerns about continuing to smuggle this mosaic.

- On July 14, 2015, they communicated regarding a mosaic depicting Phaedra.  They discussed the seizure of the panel by Turkish authorities at the Syrian border.  AlJrad explained that the smuggler made a mistake and lost the panel.  Defendant expressed his dismay and asked if there was any way to release the Phaedra mosaic, and wondered how it was seized because the borders were loose.

- On July 20, 2015, they communicated about the mosaic of Phaedra and a mosaic cut into pieces.  AlJrad stated that the borders were completely closed and sent a photograph of a mosaic cut into pieces that he would put back together in Turkey.  Defendant stated that he would cut it into 100 pieces and swallow it if necessary.

- On July 20, 2015, they discussed that one panel had been lost through Interpol, another had been seized, and "may God keep the third panel"[2] (i.e., the Mosaic charged here) safe.

- On August 18, 2015, they again discussed mosaics in Syria.  AlJrad stated that the most important thing was that he and defendant opened a correct and safe path to shipping the

---

[2] To be clear, the communications about the third panel is direct evidence of the Mosaic.

18

mosaics, and that they could work for a year and not leave
any panel in Syria.  Defendant responded that AlJrad had the
"ambition that embraced the mountains."

These messages tend to prove that defendant and AlJrad were actively
working to smuggle numerous mosaics.  Because their conspiracy
encompassed multiple mosaics and their communications about the
charged Mosaic frequently overlapped with their communications about
additional mosaics, their communications about the various mosaics
are inextricably intertwined with the charged offense.

    2.   Evidence About Uncharged Mosaics and Artifacts are
Admissible Under Federal Rule of Evidence 404(b).

Even if the Court disagrees that the aforementioned evidence is
inextricably intertwined with the charged offense, the same evidence
would be admissible under Rule 404(b).  Evidence of other acts may be
admitted under Rule 404(b) if: "(1) the evidence tends to prove a
material point; (2) the prior act is not too remote in time; (3) the
evidence is sufficient to support a finding that the defendant
committed the other act; and (4) (in cases where knowledge and intent
are at issue) the act is similar to the offense charged."  United
States v. Vo, 413 F.3d 1010, 1018 (9th Cir. 2005).

Here, defendant's acts in seeking to procure smuggled mosaics
from AlJrad are identical in time and in character to the charged
offense.  And the acts prove that defendant knew the Mosaic at issue
was valuable and authentic.  Defendant is charged with lying about
the Mosaic's quality and value in an attempt to evade government
scrutiny.  He submitted documentation that stated the Mosaic was
worth less than $600.  At the same time, he was messaging AlJrad
about procuring and selling smuggled mosaics worth millions of

dollars.  The evidence summarized above tends to prove defendant's motive, intent, knowledge, and absence of mistake in causing the misclassification of the Mosaic.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant the government's motion to admit the aforementioned communications between defendant and AlJrad.